IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

APR 1 1 2012

BY          CHRIS R. JOHNSON, CLERK

DEPUTY CLERK

| | |
|---|---|
| SUSAN JOHNSTON, Administrator | ) |
| of the Estate of SHERI WADE, | ) |
| Deceased, on behalf of THE ESTATE | ) |
| OF SHERI WADE and on behalf | ) |
| of the Wrongful Death Beneficiaries of | ) |
| SHERI WADE, | ) |
| | ) |
| **PLAINTIFF** | ) |
| | ) |
| **V.** | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **DEFENDANT** | ) |

Civil Action No. _12-4034_

## COMPLAINT

COMES NOW the Plaintiff, Susan Johnston, Administrator of the Estate of Sheri Wade,

Deceased, on behalf of the Estate of Sheri Wade and on behalf of the Wrongful Death

Beneficiaries of Sheri Wade (hereinafter "Plaintiff"), by and through the undersigned counsel,

and would respectfully show unto this Honorable Court the following:

### INTRODUCTION

1.     This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§

2671 et seq. ("FTCA"), the Arkansas Survival Statute, Ark. Code Ann. § 16-62-101, and the

Arkansas Wrongful Death Act, Ark. Code Ann. § 16-62-102, for personal injury, wrongful death

and survival damages caused by the negligence and fault of the United States of America by and

through its agency, United States Forest Service (hereinafter "USFS" or "Forest Service"), an

agency of the United States Department of Agriculture (hereinafter "USDA" or "Department of

Agriculture"), and its agents and employees.  The action arises out of the flash flood event that

resulted in the deaths of 20 people during the early morning hours of June 11, 2010, at the Albert Pike Recreation Area in the Ouachita National Forest. Sheri Wade died as a result of the negligence that gives rise to this claim.

JURISDICTION AND VENUE

2.     The action alleged herein against Defendant arises under the FTCA, 28 U.S.C. §§ 2671 et seq. Further, because this civil action is based on claims against the United States for money damages for personal injury, loss of property and death caused by the negligent or wrongful acts or omissions of government employees while acting within the scope of their office or employment, this Court has original jurisdiction under 28 U.S.C. § 1346(b)(1) (federal tort claims) as well as under 28 U.S.C. § 1331 (federal question jurisdiction).

3.     Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1402 because this is a civil action involving a tort claim against the United States and because the acts and omissions complained of occurred in this judicial district.

4.     All procedural prerequisites to filing this action have been satisfied, met, or otherwise waived, including the exhaustion of all administrative remedies under the FTCA.

5.     On or about September 16, 2011, Plaintiff Susan Johnston, Administrator of the Estate of Sheri Wade, Deceased, on behalf of the Estate of Sheri Wade and on behalf of the Wrongful Death Beneficiaries of Sheri Wade submitted an administrative claim for damage, injury and death to the Forest Service, the Secretary of Agriculture and the Office of General Counsel for the USDA via certified mail, return receipt requested. Plaintiff's claim was received by the Forest Service on September 19, 2011, the Secretary of Agriculture on September 23, 2011 and the Office of General Counsel for the USDA on September 19, 2011.

6.     As of the filing date of this complaint, more than six months have passed without final disposition of Plaintiff's above-referenced administrative claims. Therefore, at the option of Plaintiff, such claims may be deemed finally denied. Accordingly, pursuant to 28 U.S.C. § 2675(a), the Court has jurisdiction over this action.

## PARTIES

7.     Susan Johnston is the duly appointed and serving Administrator of the Estate of Sheri Wade, Deceased, having been so appointed by the Probate Court of Little River County, Arkansas, on the 9th day of August, 2010.

8.     Susan Johnston is the duly appointed and serving Guardian of Randall Allen Wade, Jr., minor son of Sheri Wade, Deceased, having been so appointed by the Probate Court of Little River County, Arkansas on the 7th day of December, 2010.

9.     Sheri Wade died on June 11, 2010 at 46 years of age. She is survived by one son, Randall Allen Wade, Jr.; a step-daughter, Haley Wade; her adoptive father, George Edward Boyd, Sr.; two half-sisters, Diana Lynn Sullivan and Linda Ann Van; an adoptive sister, Debbie Boyd Cox; and three adoptive brothers, Kenneth Boyd, George E. Boyd, Jr. and Seth Boyd. Sheri Wade is also survived by one or more unidentified natural siblings.

10.    Defendant, United States of America, is a sovereign government that has consented to be sued for civil liability in accordance with the FTCA, 28 U.S.C. § 2671, et seq. Pursuant to 28 U.S.C. §§ 1346(b)(1) and 2679, the United States of America is the proper party defendant in a lawsuit brought pursuant to the FTCA.

11.    At all times material hereto, the Forest Service was and is an agency of Defendant under the direct jurisdiction of the USDA.

12. At all times material hereto, Defendant, United States of America, was and is responsible for the actions, decisions, omissions, operations, fault and neglect of the officers, agents and employees of the Forest Service.

## BACKGROUND FACTS

13. The Albert Pike Recreational Area campground ("Albert Pike" or "campground") is a developed campground within the Ouachita National Forest. It is located approximately six miles north of Langley, Arkansas, in Montgomery County. The campground is administered by the Forest Service, Ouachita National Forest, Hot Springs, Arkansas. The campground is also administered by USFS personnel stationed at the Caddo-Womble Ranger District Office in Glenwood, Arkansas.

14. The Albert Pike campground contains 54 campsites among four areas, or loops, and is surrounded by steep, rugged terrain. The campground is located in the floodplain of the Little Missouri River, a designated Wild and Scenic River, which runs through the campground. Rain that falls in the watershed of the Little Missouri River runs down the mountainsides and accumulates in the river, causing the river to rise rapidly.

15. On or about Wednesday, June 9, 2010, the Wade Family, including Sheri Wade and her son Randall Wade, traveled to Albert Pike. The Wades were staying in a borrowed recreational vehicle in Loop D, a developed campsite on the east side of the Little Missouri River containing electricity and water hookups that opened to the public in 2004. The following day, Thursday, June 10, 2010, Sheri Wade's daughter, Leslie Jez, and Leslie's husband Adam Jez and their three-year-old son Kaden, arrived to spend the weekend at Albert Pike with their family.

16. The same day, a storm system, which had developed in south Texas, was moving northeasterly through Arkansas. The system had caused more than 10 inches of rain to fall in

areas from San Antonio to Tyler, Texas, and required the evacuation of persons from flooded homes. That storm system brought two rounds of thunderstorms into southwest Arkansas in the afternoon and evening hours of June 10, 2010. One to three inches of rain were common, with up to four inches in local areas.

17.     Albert Pike has a long history of documented flooding events dating back to at least 1940. For example, between 1940 and 2010, there were at least ten documented flood events in the years 1940, 1961, 1975, 1982, 1987, 1990, 2001, 2006, 2008 and 2010. Moreover, between March 27, 2000 and September 2, 2008, there were 13 flood incident reports filed concerning flooding or property damage resulting from severe weather. Most ominously, one flooding event occurred on July 3, 2004, three days after Loop D opened, and a USFS law enforcement officer and other employees were called out to assist campers as a result of flooding.

18.     Despite this history of flash flooding in the area, USFS employees made no attempt to warn campers of the dangerous, "flashy" nature of the Little Missouri River. Likewise, USFS personnel failed to post flood hazard warning signs and notices at Albert Pike even though there was an established record of flooding at Albert Pike and USFS regulations required the posting of such signs.

19.     As a result of the storm moving into Arkansas from Texas on Thursday, June 10, 2010, the National Weather Service issued a flash-flood watch for western Arkansas at 11:58 a.m. on June 10, 2010, to remain in effect until 7 p.m. on Friday, June 11, 2010.

20.     In the early morning hours of June 11, 2010, rain was widespread from Texarkana, Miller County, in southwest Arkansas, to Little Rock, Pulaski County, Arkansas. Heavy, sustained rainfall was experienced in Montgomery County. Before dawn, while campers

were asleep, the Little Missouri River overran its banks into the Albert Pike campground. Unbeknownst to the campers, Albert Pike would soon be completely inundated by fast, rising water and RVs and other vehicles would be swept downstream in the ensuing flood.

21.    Inside the Wade RV, Adam Jez awoke sometime between 2:30 and 3 a.m. Jez looked outside, saw the heavy rainfall and headlights, and woke his family. They quickly dressed. Adam Jez opened the door and stepped out of the camper in order to retrieve his son Kaden's life-preserver from his truck. Water was at the bottom of the camper door, and Jez could already see vehicles and other RVs floating. Jez stepped into the current, which was above his knees and very strong. Unable to reach his truck, he returned to the RV, which by this time had begun rocking and turning with the current and was just beginning to float. Jez held onto his wife Leslie, who was clutching their son. Sheri Wade and Randall Wade were with them. The family managed to stay together in the roiling water and pouring rain by holding onto anything they could, while dodging trees, limbs, vehicles and other debris in the pitch black. Because of the force of the rising current, however, the family eventually lost their footing and became separated. Neither Adam Jez nor Randall Wade saw the other three again once they were separated. Jez and Wade were buffeted in the rapidly moving water and were finally able to cling to trees as the water rushed around them. For approximately two hours, they held on for their lives, still dodging trees, limbs, vehicles and other debris. Around daylight, the water receded enough for Jez and Wade to climb down and walk to safety.

22.    Search and rescue operations began before daylight. Agencies and personnel that assisted in the operations included the Montgomery and Pike County Sheriffs' Offices, the Arkansas State Police, USFS law enforcement personnel, the Arkansas Game and Fish Commission, the Arkansas National Guard, the Arkansas Forestry Commission, the Arkansas

Department of Emergency Management and others. Hundreds of volunteers assisted in the search effort over several days. It is not known exactly how many people were staying at the Albert Pike campground on the evening of June 10, 2010; estimates range from 200 to 300. Approximately 60 campers were rescued. Twenty people lost their lives, including Sheri Wade, Leslie Jez and Kaden Jez.

23. On June 14, 2010, the Secretary of Agriculture ordered an investigation into the flood at Albert Pike. The purpose of the inquiry was to examine events preceding, during and immediately after the flood and to make recommendations based upon findings of fact. On September 24, 2010, the USDA Review Team issued its report, a 70-page, comprehensive document cataloging multiple failures by the Forest Service in connection with events leading up to the flood. See USDA Review Team Report: Inquiry Regarding the June 11, 2010 Flash Flood Incident, Albert Pike Recreation Area, Ouachita National Forest, Sept. 24, 2010 (hereinafter "USDA Review Report"), pp. 33-36. In addition to its findings, the Review Team also made numerous recommendations. See USDA Review Report, pp. 39-45. On October 18, 2010, the Forest Service responded, acknowledging and admitting most of the Review Team's findings and conclusions. See Recreation Visitor Safety Report, USDA Forest Service, Oct. 18, 2010 (hereinafter "Recreation Visitor Safety Report"), pp. 14-16.

## NEGLIGENCE OF THE UNITED STATES FOREST SERVICE

24. Plaintiff reiterates and incorporates fully herein the allegations contained in paragraphs 1 through 23.

25. The death of Sheri Wade was caused by the negligence of the Forest Service, an agency of the USDA. Employees of the Forest Service, during the time Loop D was proposed,

approved and constructed, acted negligently in proposing, approving and constructing Loop D in the following instances:

a. Negligently using improper methods to determine the 100-year floodplain elevation;

b. Negligently failing to build the Loop D campground in an alternate location outside the 100-year floodplain, as required by the Land Resource Management Plan in effect in June 2010;

c. Negligently failing to recognize the potential and obvious threat from flooding that was created by constructing Loop D in a floodplain, particularly in view of the surrounding topography of the area and documented history of flooding events;

   i. As the USDA's investigation concluded, "the most preventive measure the Forest Service could have taken would have been to never develop Loop D in the first place." See USDA Review Report, p. 36.

d. Negligently failing to include the posting of flood hazard signs in the contract for construction of Loop D;

   i. As admitted by USFS personnel, "the contract would have been a perfect avenue to include the issue from the [National Environmental Policy Act] process about signing the area with warning signs about flooding. Fleming did not know why that didn't get entered into the contract." See USDA Review Report, p. 16.

e. Negligently failing to inform engineers, architects and builders hired to construct Loop D of the flooding risks created by locating the proposed campground within the floodplain;

f. Willfully disregarding recommendations to limit sites at Loop D to primitive camping and to not install electricity, water or sewage hookups;

    i. A USFS soils scientist advised the district ranger of concerns that the proposed

       site was within the 100-year floodplain, that prior flooding had occurred and that

       flood warning signs would need to be posted. See USDA Review Report, p. 3.

       Moreover, the scientist determined that "it would be advisable to plan these

       proposed campsites only as primitive camping areas and minimize any soil and

       flood plain disturbance.  Things such as electricity, water and sewer hookups

       should not be planned." See USDA Review Report, p. 4 (emphasis added).

g.  Negligently failing to follow the mandates of the National Environmental Protection

    Act and USFS guidelines when the district ranger unilaterally decided that the

    proposed construction site of Loop D was not within the 100-year floodplain based on

    his own visual assessment;

    i. As the USDA determined, the district ranger's assertion in the environmental

       assessment that " 'none of the new campsites proposed for Loop D are in the

       floodplain' is simply not supported by any credible evidence contained in the

       project file." See USDA Review Report, p. 14.

h.  Negligently failing to comply with USFS regulations and other legal requirements for

    building within a floodplain, the appropriate signage for flood hazard warning and

    other mitigating factors required for construction within a floodplain;

i.  Negligently failing to consider the well-documented history of flooding at the Albert

    Pike campground;

j.  Negligently failing to recognize that maps clearly show that the Albert Pike

    campground is located within a floodplain;

k.  Negligently failing to adequately supervise construction of Loop D; and

l.  Negligently failing to take all reasonable, necessary and appropriate precautions and
    measures to protect the lives, safety and property of persons who utilized the Albert
    Pike campground and to otherwise maintain the campground and surrounding
    floodplain in a safe manner.

26.   In placing Loop D of the Albert Pike campground in a floodplain that constituted
a public nuisance under the laws of the State of Arkansas, and that caused or contributed to the
death of Sheri Wade, the Forest Service and the USDA engaged in an ultrahazardous activity and
are subject to strict liability for damages arising out of her death.

27.   The death of Sheri Wade was caused by the negligence of the Forest Service, an
agency of the USDA. At all relevant times, the USFS and its employees and agents undertook
and therefore owed a duty to Sheri Wade in light of all relevant circumstances, to exercise
reasonable care, including the duty to monitor and ensure the safety of the visitors at Albert Pike.
The USFS breached its duties owed to Sheri Wade in the following particulars and respects:

a.  Negligently failing to post signs or otherwise warn campers of the dangers of flash
    floods in the area as a result of conditions that the USFS knew or in the exercise of
    reasonable care should have known existed at Albert Pike in June 2010, in violation
    of USFS regulations and internal directives relating to flood signing;

    i.  A well-known record of significant flooding events existed prior to the flood of
        June 11, 2010.  As the USDA found in its investigation, a flooding incident four
        days after Loop D opened on July 3, 2004, as well as subsequent flooding
        incidents, "should have alerted the Forest Service to the existence of potential
        flood hazards at Albert Pike Campground D and should have prompted the Forest

Service to undertake mitigation measures, such as posting of signs." See USDA Review Report, p. 17.

ii. Forest Service Manual 2527.5, Posting of Past and Probable Flood Heights, requires the posting of flood hazard signs to enhance public awareness of flood hazards by placing appropriate signs and notices showing the highest flood level and probable 100-year flood height.

iii. Forest Service EM-7100-15, section 13.2, also provides for flood hazard warning and notices, as well as a requirement that the Forest Service post supplementary information and posters or bulletins as needed for visitor information; due to the USFS's negligence, no such signs or warning posters were posted at Albert Pike prior to the June 11, 2010 flood event.

iv. The USFS itself acknowledged that "[t]he Ouachita National Forest failed to post hazard warning signs and notices at the Albert Pike Campground even though there was an established record of flooding at Albert Pike and Forest Service guidelines called for the posting of such signs." See USDA Review Report, p. 34; see also Recreation Visitor Safety Report, p. 15.

v. As the USDA's investigation concluded, "[t]he Review Team is of the opinion that proper signs and posters would have given prior notice to campers at the Albert Pike Campground of the fact that the campground is located in a flood plain and has a history of flooding." See USDA Review Report, p. 28.

vi. Among other failures, the Region 8 Flood Sign Coordinator was negligent in failing to coordinate with the Albert Pike campground to share information on flood signs with Regional Sign Coordinators.

b. Negligently failing to develop, maintain and implement contingency plans or other mitigation steps to deal with a major flooding event at the Albert Pike campground, as acknowledged by the USDA, including plans for evacuation or search and rescue of visitors in the Albert Pike campground. See USDA Review Report, p. 35; see also Recreation Visitor Safety Report, p. 15.

c. Negligently failing to take action to reduce the risk of flooding, as mandated by Executive Order 11988, which requires agencies of the government to "take action to reduce the risk of flood loss, to minimize the impact of floods on human safety, health and welfare…;

d. Negligently failing to educate USFS employees on Forest Service directives and policies related to flood hazards and negligently failing to implement directives on critical issues such as signage and public safety;

    i. As was found by the USDA, "Ouachita Forest Service employees in Region 8 and on the Ouachita National Forest do not have adequate knowledge of Forest Service directives and policies related to flood hazards and mitigation requirements." USDA Review Report, p. 35.

e. Negligently failing to adequately implement an adequate warning system to notify campers at Albert Pike of dangerous weather conditions or flooding risks;

f. Negligently failing to adequately warn Albert Pike camp hosts or campers of the dangers of the impending storm of June 10-11, 2010;

    i. Despite implementing a severe weather policy with respect to employees of the Ouachita National Forest and the Caddo-Womble Ranger District Office, the USFS failed to implement a similar policy for the safety of the public.

g. Negligently failing to give Albert Pike campground volunteer hosts or campers prior notice of the dangerous weather conditions that were predicted to affect the Albert Pike campground, including the flash-flood watch that was issued at 11:58 a.m. on June 10, 2010 and that was to remain in effect until 7 p.m. on June 11, 2010;

h. Negligently failing to provide and train USFS personnel to warn campers at the Albert Pike campground of the potential for the Little Missouri River to rise rapidly and to flood into the campground in the event of heavy rains;

i. Negligently failing to provide USFS personnel and volunteer hosts at the Albert Pike campground with training regarding the potential for flooding of the campground during storm events and regarding safety precautions and procedures to be followed in the event of storm events and flooding;

j. Negligently failing to provide and train USFS personnel to be alert to weather forecasts of the National Weather Service regarding potential storm events in the watershed of the Little Missouri River;

k. Negligently failing to advise volunteer hosts that the Albert Pike campground was located in a floodplain; negligently failing to train said hosts with respect to a flood contingency plan; and negligently failing to train or prepare volunteer hosts for emergency situations, including a flash flood, as the USDA determined. See USDA Review Report, p. 35;

   i. In so doing, USFS personnel violated the following Forest Service Manual directives: (1) FSM 2331.1, Volunteer Hosts, Special training and orientation for volunteer hosts in encouraged; FSM 1834.2, Orientation, Training & Safety, … Provide each volunteer orientation on Forest Service history, programs,

environmental quality, and public safety, as appropriate... Ensure volunteers receive the necessary training appropriate to enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

l. Negligently failing to maintain the Albert Pike campground in a reasonably safe condition for public use and failing to protect the health and safety of visitors, as required by the Land and Management Plan in effect in June 2010;

m. Negligently failing to monitor and ensure the safety of campers at Albert Pike, as required by Section 21.04 of the USFS Health and Safety Code Handbook: "It is the responsibility of officers and supervisors...to ensure the safety of both employees and the public";

n. Negligently failing to evacuate campers at Albert Pike in a timely fashion;

o. Negligently failing to repair a broken radio repeater that resulted in an inability to communicate via radio and the loss of 24-hour dispatch service;

p. Negligently failing to correct reported broadcast transmission problems from Albert Pike with two-way Forest Service radios, including knowingly failing to repair the High Peak repeater that had not functioned properly for six months prior to June 11, 2010;

q. Negligently failing to provide a National Weather Service weather radio to the volunteer hosts to ensure that hosts and campers would be alerted of dangerous weather conditions;

r. Negligently failing to address communication issues with USFS employees and law enforcement personnel and failing to implement alternate means of communications to ensure the safety of USFS employees and campers, as a result of the campground's

topography, malfunctioning radio tower repeater and known lack of cellular reception;

s.   Negligently failing to ensure timely emergency response capabilities for all emergencies, including weather-related emergencies, rather than solely focusing on fire emergencies; and

t.   Negligently failing to implement 24-hour dispatch services for emergency situations at Albert Pike to ensure the safety of USFS employees and campers.

28.    As an invitee, the Forest Service and the USDA owed a duty to Sheri Wade to use ordinary care to maintain the premises in a reasonably safe condition to prevent injury to her life, safety and property.

29.    The Forest Service and the USDA willfully and wantonly violated their obligations to use care for the life, safety and property of Sheri Wade in failing to take the precautions and in the negligent acts and omissions set forth above.

## DAMAGES

30.    As a direct and proximate result of the negligent acts and omissions described hereinabove, Forest Service and USDA employees and agents caused or were a substantial factor in causing the death of Sheri Wade.

31.    Susan Johnston, as Administrator of the Estate of Sheri Wade, Deceased, on behalf of the Estate of Sheri Wade and on behalf of the Wrongful Death Beneficiaries of Sheri Wade, for their claim for personal injury, wrongful death and survival damages on behalf of said Estate and Wrongful Death Beneficiaries asserts claims for all compensatory damages, both past and future, including, but not limited to: the physical injuries and death described herein; all pecuniary injuries, including economic loss, loss of wages, benefits and economic opportunity;

pain and suffering; conscious pain and suffering before death; mental anguish; loss of life; loss of enjoyment of life; loss of consortium; loss of services and contributions; loss of parental guidance; medical expenses; property damage; funeral and burial expenses; costs of litigation; and any and all further relief to which Plaintiff is entitled to by law.

32.    Plaintiff seeks any and all punitive or exemplary damages to the extent she is allowed under applicable law for the actions of Defendant in causing the injuries and death as alleged herein.

33.    Plaintiff seeks any and all attorney's fees, costs and expenses to which she may be entitled under applicable law.

34.    Plaintiff seeks any pre-judgment and post-judgment interest to which she may be entitled under applicable law.

## PRAYER FOR RELIEF

35.    WHEREFORE, Plaintiff, in her representative capacity, prays for judgment against Defendant, United States of America:

- (a)    for all general and special damages as alleged herein and within the jurisdiction of the Court, in an amount to be proven and apportioned at trial;

- (b)    for any and all damages suffered by the Estate of Sheri Wade allowed under the Arkansas Survival Statute, Ark. Code Ann. § 16-62-101;

- (c)    for any and all damages for the wrongful death of Sheri Wade allowed under the Arkansas Wrongful Death Statute, Ark. Code Ann. § 16-62-102;

- (d)    for any and all other compensatory damages allowed under applicable law;

- (e)    for any and all punitive or exemplary damages to the extent they are allowed under applicable law;

- (f)    for any and all attorney's fees and expenses allowed under applicable law;

- (g)    for all costs, including but not limited to expert witness fees and expenses herein and all interest allowed under applicable law; and

(h)     for all other relief, both special and general, to which Plaintiff may be justly
         entitled as this Honorable Court deems proper.


Dated: April 10, 2012                          Respectfully submitted,

                                                _____
                                                Mickey Buchanan (Arkansas Bar No. 77020)
                                                Attorney at Law
                                                360 North 2nd Street
                                                Post Office Box 669
                                                Ashdown, Arkansas  71822
                                                Telephone: (870) 898-3385
                                                Email:  mickeybuchanan@sbcglobal.net

                                                Attorney for Plaintiff